Jones' Ex. &c.
vs.
Jones' Widow,
&c.

judgment of the court below, by which his petition was dismissed, is correct.

Wherefore, the judgment is affirmed.

Chancery

Case 18.

Jones' executor and devisees *vs.* Jones' widow and heir at law.

ERROR TO THE MERCER CIRCUIT.

1. Acts done by an executor under probate of a will, and letters testamentary granted by the county court prior to any contest about the will, as payment of debts, legacies, &c., are binding, and not affected by a nullification of the will.

2. The surety of an executor, who is also a legatee, is not on that account incompetent to prove the will if it may be inferred, (nothing appearing to the contrary,) that the executor holds his legacy as legatee and not as executor.

3. Where the contest about the will was not instituted for nearly one year after its proof in the county court, and it appeared that another fund, independently of the legacy given to the executor, was provided for paying debts, the presumption is that the executor holds his legacy as legatee, not as executor; and in that case the surety of the executor would not be responsible to creditors, and competent to prove the will.

4. It is not absolutely indispensible to the validity of a will that the testator give directions for its preparation.

This bill was filed in the Mercer circuit court by the widow and only child and heir at law of Cyrus Jones, deceased, to set aside and vacate a paper purporting to be the last will and testament of the aforesaid Cyrus Jones, deceased, which had been proved and recorded in the county court, and for distribution. An issue was formed of will or no will, and submitted to a jury, who found that the paper proved was not the will of said Jones. A motion was made for a new trial, and overruled, and the case brought to this court for revision—

James Harlan, for plaintiff in error—

Insisted that the circuit court erred—1st. In rejecting the testimony of Samuel Jones, a witness offered by plaintiff's in error, on the ground that he was

surety in the executor's bond. Because witness had no certain and direct interest in the suit. 3 *Marshall*, 106.

2d. As the witness was competent to testify against his interest. 1 *Bibb*, 154, 301. That if the witness had any interest it was in opposition to the plaintiff's in error. 1 *B. Monroe*, 152, 296.

3d. That the court below had erred in its instruction to the jury. That it was not material, as the circuit judge supposed, whether the testator had or not given any instructions for drawing the will. The only question was whether the paper in controversy was the will of the testator; whether he executed it understandingly, and according to the forms of law.

4. That the exception to the decision of the court was well taken, and the benefit of the court's error reserved without a formal exception.

5th. That the proof shows a due and legal publication of the will, and the testimony fails to show any undue influence. 2 *Stat. Law*, 1538-9; *Gwyn v. Radford*, 2 *Littell*, 137.

BALLINGER & SON, on the same side—

Claims a reversal because the court excluded the testimony of Samuel Jones, who was the surety of the executor, and for that cause only. Cited, 10 *B. Monroe*, 138; *Miller v. Field*, 3 *Marshall* 106; *Morton v. Wooldridge*, Pr. Dec., 139. To render a witness incompetent he must have a direct and certain interest; a contingent and doubtful interest is not a disqualification to give testimony, but goes only to credability. *Say v. Green, Hardin*, 117; *Adams v. Gardner*, 13 *B. Monroe*, 202.

That there was no evidence of undue influence; only two changes were made in the will, at the suggestion of others, as shown by the proof, and they were for the benefit of those assailing the will.

GEO. ROBERTSON, same side—

Contends—1. That a careful scrutiny of the evidence will satisfy the judicial mind that the proof

Jones' Ex. &c.
*vs.*
Jones' Widow, &c.

was altogether insufficient to authorize the finding of the jury against the will, and the decree of the court upon it; on the contrary, that the proof showed that the testator was of disposing mind and memory, and duly published the will, and that there is a failure to prove any undue influence.

2. That the circuit judge erred in instructing the jury, in substance, that the will was not valid unless written at the testator's request.

3. The court also erred in rejecting the testimony of Samuel Jones and his wife. The executor, by being such, was not incompetent to prove the will; and if he was incompetent, by reason of his being a legatee, the witness was not thereby rendered incompetent—he had no interest in the legacy, and was not *surety of the legatee*, and as surety of the executor, could not be affected by the legacy.

It was not necessary to disclose the purpose for which Jones was offered—his materiality is *prime facie* presumed from his being offered. *Kennedy v. Barnett,* 1 *Bibb,* 154; *Fields v. Davidson,* 9 *B. Monroe,* 77; *Bardstown T. P. R. C. v. Duncan.* 5 *B. Monroe,* 395.

Rountree and Fogle, for appellants—

Insists—1st. That from the facts appearing in the case, that the paper proved in the county court is not the true last will and testament of Cyrus Jones, deceased. That it is not such a will as a sane man would reasonably be supposed to make, taking into consideration the circumstances of his widow and child, unless unduly influenced by others. 2 *Starkie's Evidence,* 929, *note* 1; 2 *volume Kent's Com. page* 224; *4th Ed. Tomlin's Law Dic., title Guardian; Bouvier, 1st Ed., page* 453, *title Guardian; Bac. Ab.,* 3 *vol.,* 403.

2d. That there was undue influence exercised by the Jones family, and rely upon the facts proven, in respect to the great solicitude manifested to induce the testator to buy land, as evidence of such undue influence. *Cited, Jarman on Wills, Perkins' Ed.,* 1 *vol.,* 39, 41–2, 44–5, *note* 4, *page* 46, *and note; Williams*

on *Ex'ors.*, 3 *Am. Ed.*, *vol.* 1, *top page* 35, *side page* 36; *top page* 40, *side page* 41; *top page* 42, *side page* 42.

3d. That the chancellor should not interfere to set aside a verdict, and award a new trial, unless palpably against the weight of evidence. Cited, 8 *Dana*, 320, and authorities there referred to.

That the instructions were correctly given, as asked by appellant's council in the court below, and that the jury ought always to be *satisfied*—See 9 *Dana*, 318; and that the other instructions were also correct. 6 *B. Monroe*, 49.

In respect to the testimony of Samuel Jones, the surety of the executor, and his wife—the bill of exceptions does not state what fact the appellants expected to prove by them, nor does the record anywhere state what they were offered to prove. We suppose this necessary; for the question arises, have you been injured by the rejection of the testimony, if not, it is an error of which you cannot complain—See 2 *Dana*, 131; 5 *Dana*, 269; 4 *B. Monroe*, 403. But we apprehend that there cannot be any doubt that they were properly rejected for a failure to state what they would prove, and this will be presumed in favor of the action of the circuit court until the contrary appears.

It is not denied that an executor merely, or a trustee without an interest, is a competent witness; but an executor or trustee, who is also a devisee under the will, is not. Under the statute of Victoria, where the executor is made competent, the courts decide that if he be a legatee also he is not competent without he release his leagacy. *Williams on Ex'ors.*, 3 *Am.*, *from 4th Lond. Ed.*, *top page* 288, *side page* 289, *vol.* 1. The witness offered is the surety of the executors, who are legatees. If the will is set aside, will the executors not be liable to distributees for the amount of the legacies and the sureties also?

If the paper here produced is established, is not the responsibility of the surety decreased in the event of the death of the only child of Cyrus Jones, deceased;

JONES' EX. &c.
*vs.*
JONES' WIDOW,
&c.

and is not the contingent remainder of James H. Jones and Jo. Renfro's wife, &c., settled and established by the will, and his responsibility to that extent diminished; and to say the least of it, upon a fair construction of the third clause of the paper in contest, do not the brothers and sisters, on the death of complainant and her son, and of the latter without issue at his death, receive the devise of $6,000; and have they not a vested contingent remainder to be enjoyed at the death of the appellees, to the exclusion of the issue of the child of decedent? We think James H. Jones is certainly not competent; if so, his surety is not—the executors having given joint bonds. We refer the court to 1 *Starkie*, 106; 2 *Starkie*, 929, *and note*; 1 *Greenleaf*, 461, *sec.* 392; *Loughborough's Digest, page* 240, *Acts of* 1838, *title, Executors and Administrators.*

MOREHEAD & BROWN, on the same side—

Contend that there is only one exception properly taken in the case, and that is to the refusal of the court to grant a new trial; and that the court, by signing this exception, did not admit that the grounds filed for a new trial existed in fact. Grounds filed for a new trial are not filed under the sanction or approval of the court. They are the *exparte* statements of counsel, and when the court overrule them, and an exception is taken, it merely manifests the fact either that the court denied that such grounds existed in fact, or regarded them as unsubstantial if they had existed.

If then, the party wishes to save the question, he must show by the record that these grounds did exist, or by a specific bill of exceptions to the point of which he complains, show that such point did exist. For example, had one of the grounds here filed been "that the court erred in permitting plaintiff's attorney to go into the jury room and converse with the jury," would the present bill of exceptions have been an admission of that fact? Surely not. For the same

reason this bill of exceptions should not be understood to admit that any question on the instructions or testimony was ever made or excepted to on the trial, or that any point was saved. The evidence on the trial is alone spread on the record, and the bill of exceptions is only competent to raise the question whether the verdict was against the testimony. If the defendant was not satisfied with the instructions, he should have filed a bill, setting forth the instruction of which he complained; if, then, the court had given such instruction against his will, the signing of the bill in the present tense "excepts," would have been an admission that the exception had been taken in proper time; otherwise, when he presented his bill, he would have put the court on its guard, and the court would have refused to sign the bill because he had not saved the question at the time.

The attempt to embrace all these questions in a simple exception to a motion for a new trial, would be eminently calculated to deceive the court, and frustrate the ends of justice.

The same remarks apply to the exclusion of Jones as a witness, as the record does not show that any exception was taken to the decision of the court. The record does not show that the instructions were given by the court, but only that they were "filed by complainants." It is therefore denied that the plaintiffs in error can now raise any question upon the correctness of the instructions, or the rejection of Jones' testimony.

2. The record only shows the whole testimony that was given to the jury. The incompetency of Jones, not on his *voire dire* but by proof *aliunde*, either of which modes is competent. The testimony on this point was addressed only to the court. The court acted on it, and we cannot say the court erred unless all the testimony which was heard by the court had been incorporated in the bill of exceptions. This was not done. This was strictly a collateral issue, not involving the testimony in chief, and all the testi-

Jones' Ex. &c.
vs.
Jones' Widow,
&c.

mony on such collateral issues must be shown to this court before the decision can be disturbed.

3. If we be wrong on the last point, still we insist that the testimony of Samuel Jones was clearly incompetent; he was surety to an executor who was also a legatee, and also a vested remainderman; his responsibility will be increased if the will is vacated; then he will be responsible to the distributees for the whole estate—if it stands he will not be responsible to the executor for his own legacy. In other words, his bond as executor will be expanded or contracted, and his liability will be enlarged or diminished as the will stands or falls—see authorities cited by adjunct counsel.

4. Jones' testimony was offered when the time had passed for giving testimony in chief. What he was intended to prove, whether rebutting facts or facts in chief, was not stated, and it is only the rejection of proof competent to the point in issue which constitutes error, and this court should not reverse and remand a cause merely to recall a witness, when there is nothing in the record to indicate that the plaintiff in error has been prejudiced. The case of *Fox v. Smith*, 1 *Dana*, may be thought to conflict with this view, but the original record in that case shows that it turned upon a question of interest raised upon the *voire dire* of the witness, and all the evidence on the question of interest was spread upon the record by a regular bill of exceptions taken at the time.

5. Though the bill was filed before the Code of Practice took effect, the issue was directed, and the trial had after the Code took effect, and by its provisions the bill of exceptions governed. Bills of exceptions are not proceedings in a cause—they are but evidence of what proceedings did take place, a memorial of what occurred during the proceedings. The bill of exceptions in this cause was taken two terms after the decision, in violation of sec. 376 of the Code of Practice, which expressly provides that time shall not be allowed beyond the *succeeding term* to file a

bill of exceptions. This point is reserved by bill of exceptions, properly taken in the court below. If we are correct on this point, it closes all controversy in this case.

Judge Simpson delivered the opinion of the court.

This contest involves the question of the validity of the last will and testament of Cyrus Jones, deceased. Upon the issue made up by the parties, and referred to a jury for their decision, the verdict was against the validity of the will. A motion for a new trial was overruled by the court below, and a final decree rendered in conformity with the verdict of the jury, and the executors and devisees have brought the case to this court.

The principle question that arises upon the record, relates to the competency of a witness who was offered by the plaintiff's in error, and rejected by the court. This witness was the surety of the executors in their executorial bond. One of the executors was a legatee of part of the testator's personal estate. He was not one of the heirs, and consequently was not entitled to any part of the estate, in the event that the will was vacated. Under these circumstances the court below regarded him as being interested in sustaining the will, supposing that the extent of his liability depended on its validity. If the will should be sustained he would not be responsible as surety for that part of the personal estate which was bequeathed to the executor; but if it should not be sustained his liability would be increased, as in that event the executors would be compelled to pay the amount of this legacy, as well as the balance of the personal estate, to the distributees of the intestate, and the surety would be responsible to them for it.

Is the surety of an executor responsible for all the estate that comes into the executors hands, in the event that the will is vacated, without any reference to the acts done by the executor, under the probate and letters testamentary granted by the county court,

JONES' EX. &c.
vs.
JONES' WIDOW,
&c.

ty court prior to any contest about the will, as payment of debts, legacies, &c., are binding, and not affected by a nullification of the will.

and prior to the time that any contest arises about the validity of the will? Such acts by the executor were, in the case of *Woods' adm'r. v. Nelson's adm'r.*, &c., 9 *B. Monroe*, 600, held to be legal and binding. If an executor, before any contest arises about the validity of a will, proceed in good faith to pay legacies, and to execute the provisions of the will, a sentence of nullity subsequently pronounced against the will would not have the effect to render the surety responsible for the estate which had been thus legally disposed of by the executor.

2. The surety of an executor, who is also a legatee, is not on that account incompetent to prove the will if it may be inferred, (nothing appearing to the contrary,) that the executor holds his legacy as legatee and not as executor.

Some difficulty exists in determining the extent of the liability of a surety in a case like the present, where the executor is himself a legatee. Whether he should be regarded as holding the property bequeathed to him, as legatee or as executor, must depend on the circumstances of each case, and the decision of this matter must govern and determine the question whether the surety is liable or not. If the executor is to be regarded as still holding the property in his fiduciary character, the surety would be liable, but if he is to be regarded as holding and enjoying it as a legatee, then the surety would be absolved from all responsibility for it.

Where it shall be made appear that it was the duty of the executor to retain the estate bequeathed to him, in his hands as executor, it ought to be presumed that he has performed his duty, and holds the estate in his fiduciary capacity.

If the will be contested immediately after probate thereof has been granted by the county court, or if the executor be informed that such a contest will arise, then, as it would be his duty to keep the estate in his hands as executor, he should be considered as holding in that character, so much of it as is bequeathed to himself.

3. Where the contest about the will was not instituted

In this case probate of the will was made at the August county court in the year 1850, and this suit in chancery to annul the will was commenced in July, 1851. The property which was bequeathed to the

executor was not made subject to the payment of debts, but the testator directed his debts to be paid out of his other estate.. There does not appear then, to have been any reason why the executor should have been required to keep the property in his possession as executor. Under such circumstances, and as a year had nearly expired after the grant of letters testamentary before this suit was instituted, the reasonable presumption is, in the absence of all testimony which would tend to create a different presumption, that the property was in the possession of the person to whom it was bequeathed, and that he held and used it as legatee, and not as executor, before the commencement of the present suit. The consequence is, that his surety would not be liable for it, even if the will be annulled, and he has therefore no interest on this account in the result of the contest about the validity of the will.

The circuit court, therefore, erred in excluding the testimony of the surety on the ground that he was interested in the issue between the parties. The facts which appear in the record prove that no such interest exists. If he be liable for the legacy given to the executor, he would have an interest in sustaining the will. But the existence of such a liability will have to be established by other testimony than that contained in this record.

The instructions which were given to the jury on the trial are objected to, but they all seem to be substantially right, except the last one which was given at the instance of the complainants. That instruction is somewhat exceptionable in directing the jury that they ought to find against the will unless they believe, from the evidence, that the writing exhibited as the will of Cyrus Jones, deceased, was drawn up by his request and desire, and was executed by him, as his free and voluntary act, and that he was in a proper state of mind to make a disposition of his property according to a settled and fixed purpose of his own.

JONES' Ex. &c.
*vs.*
JONES' WIDOW, &c.

for nearly one year after its proof in the county court, and it appeared that another fund, independently of the legacy given to the executor, was provided for paying debts, the presumption is that the ex'or. holds his legacy as legatee, not as executor; and in that case the surety of the executor would not be responsible to creditors, and competent to prove the will.

4. Is is not absolutely indispensable to the validity of a will that the testator give directions for its preparation.

Three requisites to the validity of the will are prescribed by this instruction. The first one, that is, that the will must have been drawn up by the testator's request and desire, was not absolutely indispensible to its validity. If a will be drawn up by or at the instance of the parties interested in its provisions, and not by the request and desire of the testator, it would be a strong circumstance against its validity; but still, a testator might adopt such a paper as his will, and if he did it understandingly, without being subjected to any undue or improper influence, and was at the time entirely competent to make a will—the mere fact that it had not been drawn up at his instance or request would not, of itself, render the will invalid. If then, the will was not drawn up by the request and desire of the testator, this circumstance should have been considered by the jury in connection with the other facts and circumstances in the case, to enable them to decide the issue between the parties, but the validity of the will should not have been made to depend upon this circumstance alone.

Wherefore, the decree is reversed, and cause remanded for a new trial, and further proceedings in conformity with this opinion.